# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMAZENTIS SA AND TIMELINE
LONGEVITY, INC.

                    Plaintiffs,

vs.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS,
IDENTIFIED ON SCHEDULE "A",

                    Defendants.

NO.  1:25-CV-12913-MJJ

**ORAL ARGUMENT REQUESTED**

## <u>DEFENDANTS' MOTION TO MODIFY THE TEMPORARY RESTRAINING ORDER AND OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION</u>

### <u>(Memorandum of Law Incorporated)</u>

Defendants, OYANXI Inc. d/b/a Totaria ("Totaria") and TCCW Inc. d/b/a Migcopat ("Migcopat," or collectively with Totaria as "Defendants"), hereby file this Motion to Modify the Temporary Restraining Order (the "TRO") issued on October 20, 2025 (Doc. No. 4), and in Opposition to Plaintiffs' Motion for Preliminary Injunction. In support thereof, Defendants rely upon the Declarations of Wei Wang, Binyan Zhu, and Jiachuan Wang.

# TABLE OF CONTENTS

I. INTRODUCTION. ........................................................................................................ 1

II. STATEMENT OF FACTS .......................................................................................... 2

III. LEGAL STANDARD. ............................................................................................... 3

IV. ARGUMENT. ............................................................................................................ 4

    A.    Plaintiff's Motion for Preliminary Injunction Should be Denied and the Asset Freeze Should be Lifted Because Plaintiff Failed to Show Irreparable Harm ........................................................................................ 4

        1.    Irreparable Harm Must Be Demonstrated, Not Presumed. ........................ 5

        2.    Plaintiffs Failed to Demonstrate Irreparable Harm with Admissible Evidence. ............................................................................................... 5

        3.    Plaintiffs' Allegation that Any Monetary Judgment is Likely Uncollectable Because Defendants Reside in a Foreign Jurisdiction is Meritless. ........................................................................................... 7

        4.    Defendants Have Already Ceased Selling the Accused Products. ............ 8

    B.    The Balancing of Harms Tips in Defendants' Favor. ........................................... 9

    C.    The Asset Restraint Should be Lifted or at Least Limited to Defendants' profits from the Accused Products. ..................................................................... 10

    D.    Plaintiffs' Allegations of a TRO Violation Are Baseless. .................................... 14

V. CONCLUSION. ......................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*ADA Sols., Inc. v. Engineered Plastics, Inc.*,
2011 U.S. Dist. LEXIS 142067 (D. Mass. Dec. 9, 2011) .................................................... 9

*Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell*,
129 F.3d 1 (1st Cir. 1997)........................................................................................................ 8

*Antsy Labs, LLC v. Individuals, et al.*,
2022 WL 17176498 (N.D. Ill. Nov. 23, 2022) .................................................................. 13

*Awareness Ave. Jewelry v. The Partnerships, et al.*,
No. 23-cv-2-TPB, 2023 WL 3568387 (M.D. Fla. May 19, 2023)................................. 8,14

*Camel Hair & Cashmere Inst., Inc. v. Associated Dry Goods Corp.*,
799 F.2d 6, 16 (1st Cir. 1986) ............................................................................................... 9

*Castrol, Inc. v. Quaker State Corp.*,
977 F.2d 57 (2d Cir. 1992).................................................................................................... 5

*CCBN.com, Inc. v. C-call.com, Inc.*,
73 F. Supp. 2d 106 (D. Mass. 1999) .................................................................................... 9

*Cengage Learning, Inc. v. Doe 1*,
2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018) .................................................................. 11

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*,
370 F.3d 151(1st Cir. 2004)............................................................................................. 4,11

*Deckers Outdoor Corp. v. P'ships & Unincorporated Assocs. Identified on Schedule A*,
2013 WL 12314399 (N.D. Ill. Oct. 31, 2013) ................................................................ 11

*Eicher Motors Ltd. v. Individuals Identified on Schedule A Hereto*,
2022 WL 3081869 (N.D. Ill. Aug. 3, 2022) .................................................................... 11

*mel-Pro Operating LLC v. TTI Floor Care N. Am.*,
No. CIV.A. 12-10568-DJC, 2012 WL 2865793 (D. Mass. July 11, 2012) ....................... 5

*Galvin v. N.Y. Racing Ass'n*,
70 F. Supp. 2d 163(E.D.N.Y.), *aff'd*, 166 F.3d 1200 (2d Cir. 1998) ................................. 9

*Gucci Am., Inc. v. Weixing Li,*

2011 WL 6156936 (S.D.N.Y. Dec. 12, 2011) ............................................................... 11,13

*Iantosca v. Step Plan Servs., Inc.,*

604 F.3d 24 (1st Cir. 2010) ............................................................................................... 11

*Juul Labs, Inc. v. 4X PODS.,*

439 F. Supp. 3d 341(D.N.J. 2020) .................................................................................... 13

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,*

51 F.3d 982 (11th Cir. 1995) ............................................................................................ 11

*Massachusetts Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emgy Prep of Com. of Massachusetts,*

649 F. 2d 71 (1st Cir. 1981) ................................................................................................ 4

*Matos v. Clinton Sch. Dist.,*

367 F.3d 68 (1st Cir. 2004) ................................................................................................. 4

*Mattel Inc. v. Entities,*

2021 WL 12314427 (S.D.N.Y. Feb. 13, 2021) ................................................................ 11

*Mazurek v. Armstrong,*

520 U.S. 968 (1997) ............................................................................................................. 3

*McNeil-P.C.C., Inc. v. Bristol- Myers Squibb Co.,*

938 F.2d 1544 (2d Cir. 1991) ............................................................................................. 5

*Middleton Mixology LLC v. Partnerships & Unincorporated Associations Identified on Schedule A,*

No. 24 12287, 2025 WL 2693857 (N.D. Ill. Sept. 22, 2025) ............................................ 7

*N. Am. Med. Corp. v. Axiom Worldwide,*

522 F.3d 1211 (11th Cir.2008) ........................................................................................... 5

*N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,*

296 F. Supp. 3d 442 (E.D.N.Y. 2017), *aff'd*, 883 F.3d 32 (2d Cir. 2018) ........................ 9

*N. Face Apparel Corp. v. TC Fashions, Inc.,*

2006 WL 838993(S.D.N.Y. Mar. 30, 2006) ..................................................................... 11

*Orkin v. Albert,*

557 F. Supp. 3d 252 (D. Mass. 2021) ................................................................................................ 3

    *Paradigm BioDevices, Inc. v. Centinel Spine, Inc.*,

2013 WL 1915330 (S.D.N.Y. May 9, 2013) ..................................................................................... 12

    *Pedinol Pharmacal, Inc. v. Rising Pharm., Inc.*,

570 F. Supp. 2d 498 (E.D. N.Y. 2008) ............................................................................................... 8

    *R.B. Dev., Co. v. Tutis Cap. LLC*,

2012 WL 2357318 (E.D.N.Y. June 20, 2012) .................................................................................. 12

    *Regan v. Vinick & Young (In re Rare Coin Galleries of Am., Inc.)*,

862 F.2d 896 (1st Cir.1988) .................................................................................................................. 4

    *RMP Capital Corp. v. Bam Brokerage, Inc.*,

21 F. Supp. 3d 173 (E.D.N.Y. 2014) ................................................................................................... 9

    *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*,

217 F.3d 8 (1st Cir. 2000) ............................................................................................................... 6,10

    *Shamrock Power Sales, LLC v. Scherer*,

2016 WL 6102370 (S.D.N.Y. Oct. 18, 2016) .................................................................................. 12

    *Sindi v. El-Moslimany*,

896 F.3d 1 (1st Cir. 2018) .................................................................................................................. 11

    *Spin Master v. Aciper*,

No. 19-cv-6949, 2020 WL 6482878 (S.D.N.Y. Nov. 4, 2020) ...................................................... 8

    *Spruce Envtl. Techs. Inc. v. Festa Radon Techs., Co.*,

No. 15-11521-NMG, 2015 U.S. Dist. LEXIS 86552 (D. Mass. July 2, 2015) ............................ 6

    *Suber v. VVP Servs., LLC*,

2021 WL 2894810 (S.D.N.Y. July 9, 2021) ..................................................................................... 12

    *tinyBuild, LLC v. The Partnerships et al.*,

24-cv- 02413 Dkt. 26 (N.D. Ill. May 7, 2024) ............................................................................... 13

    *Toho Co. Ltd. v. The P'ships*,

23-cv- 00720, [Dkt. 55] (N.D. Ill. Mar. 28, 2022) ......................................................................... 14

    *United States v. Oregon State Med. Soc'y*,

343 U.S. 326 (1952) .............................................................................................................................. 4

*Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*,

645 F.3d 26 (1st Cir. 2011) ......................................................................................... 4

*Winter v. Nat. Res. Def. Council, Inc.*,

555 U.S. 7, 20, 129 S.Ct. 365 (2008) ....................................................................... 3,13

4 *McCarthy on Trademarks and Unfair Competition* § 27:37 (5th ed.) ........................... 5

5 McCarthy on Trademarks § 30:40 (4th ed.) ................................................................ 11

**Rules**

Fed. R. Civ. P. Rule 65(c) ............................................................................................. 2

Fed. R. Civ. P. Rule 65 ................................................................................................. 12

**Statutes**

15 U.S.C. § 1114 .......................................................................................................... 2

Mass. Gen. Laws ch. 93A ............................................................................................. 2

# I. INTRODUCTION.

Plaintiffs, Amazentis SA and Timeline Longevity, Inc. (collectively as "Plaintiffs") have moved this Court seeking extraordinary, account-wide restraints and a preliminary injunction based largely on aggregate, category-level assertions and third-party testing, not defendant-specific proof. As to Defendants—Plaintiffs' operative theory is false advertising, not trademark: Defendants are not even listed on Plaintiffs' Schedule B of alleged trademark infringers. Nevertheless, the Temporary Restraining Order ("TRO") froze all of Defendants' marketplace funds, sweeping in revenues that are unrelated to the accused urolithin-A SKU ("Accused Products"), which itself represents only a tiny fraction of each storefront's sales. Defendants have ceased sales of the accused product and stand ready to certify ongoing compliance. Unfortunately, efforts to resolve the scope of the TRO through amicable means, proved fruitless.

Under First Circuit law, motions under Rule 65 that seek prejudgment asset restraints must satisfy the traditional four-factor standard "in full flower" and any relief must be narrowly tailored to a legitimate equitable objective. The only potentially relevant equitable monetary remedy under the Lanham Act is an accounting of a defendant's profits—not gross sales and not account-wide balances from non-accused products. Here, Plaintiffs have not shown any irreparable harm as to Defendants; their harms presentation conflates trademark concepts with a false-advertising theory and relies on speculation (*e.g.*, their argument that consumers "may" suffer adverse reactions) rather than evidence tied to these products and these sellers. By contrast, the pre-judgment, account-wide freeze inflicts immediate, non-compensable harm on Defendants' lawful operations far out of proportion to the Accused Products' limited footprint.

Accordingly, the Court should modify the TRO to lift the asset restraint in full. At a minimum, consistent with First Circuit tailoring principles, the Court should cap any restraint at a

reasonable estimate of Defendants' profits from the accused sales (with the option to substitute bonds in those amounts) and carve out non-accused products/accounts while the case proceeds. Plaintiffs' motion for a preliminary injunction should be denied, or, alternatively, strictly tailored to specific, defendant-tied statements with an adequate Rule 65(c) bond.

## II.     STATEMENT OF FACTS.

Defendants are online sellers whose mission is to empower holistic well-being through pure, effective, and thoughtfully curated supplements. From inception, Defendants have focused on developing high-safety nutritional supplements informed by modern scientific theory and traditional practical experience. On Amazon, Totaria and Migcopat offer dozens of dietary-supplement products across multiple categories and have earned consistently strong customer feedback. In the last 12 months, Totaria received 100% positive ratings (1,186 ratings), and Migcopat received 100% positive ratings (256 ratings). *See* Zhu Decl¶ 4; Wang Decl ¶ 4. The accused urolithin-A product is only one of many products sold by Defendants; it accounts for approximately 1% of Totaria's Amazon store sales and approximately 4% of Migcopat's Amazon store sales. *Id*., at ¶ 8. Notwithstanding this limited share, ***all funds*** in Defendants' storefront accounts are currently restrained as a result of the TRO, strangling both companies.  Efforts to resolve the scope of the restraints by engaging in a dialogue with Plaintiffs' counsel were met with indifference and a refusal to negotiate in good faith.

Plaintiffs filed this action on October 6, 2025, and sought a temporary restraining order. The Complaint alleges: (i) Unfair Competition & False Advertising under the Lanham Act, (ii) Trademark Infringement under 15 U.S.C. § 1114, (iii) False Designation of Origin under c, (iv) Deceptive Trade Practices under Mass. Gen. Laws ch. 93A, and (v) common-law trademark infringement and unfair competition. Plaintiffs' TRO application similarly invoked false-

advertising and trademark theories. Crucially, however, Defendants do not even appear on Plaintiffs' Schedule B list of parties alleged to have infringed Plaintiffs' trademark. Rather, as concerns the Defendants herein, the lone operative theory is one of "false advertising." Further, Plaintiffs did not test Defendants' products; instead, they rely on third-party testing and industry-level assertions to accuse Defendants collectively with the other defendants of false advertising.

Defendants first learned of this lawsuit when platform restraints were imposed on their accounts. As a direct result of the TRO, all funds in Defendants' storefront accounts are frozen, leaving Defendants without sufficient liquidity to pay supplier invoices, employee wages, or ordinary operating expenses. Defendants face immediate cash-flow pressure and a material risk of layoffs if the restraints are not promptly tailored to exclude non-accused products and routine business operations. Upon learning of the case, Defendants ceased sales of the accused urolithin-A products and immediately signaled their intention to comply with the Court's Order and to even post a reasonable bond. Intent on delivering maximum harm to their competitors, Plaintiffs deliberately delayed negotiations and, when they finally responded, advanced an unreasonable proposal. *See* Declaration of Wei Wang, ¶¶2-12.

## III. LEGAL STANDARD.

The Court applies the same standard in assessing requests for temporary restraining orders and preliminary injunctions. *Orkin v. Albert*, 557 F. Supp. 3d 252, 256 (D. Mass. 2021). "[A] preliminary injunction is an extraordinary and drastic remedy," which requires the moving party establish "***by a clear showing***" that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S.Ct.

365 (2008) (citations omitted). [This] traditional four-part preliminary injunction standard applies in full flower to motions brought under Rule 65 in hopes of securing prejudgment freeze orders." *Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 157–58 (1st Cir. 2004).

## IV.    ARGUMENT.

### A.    Plaintiff's Motion for Preliminary Injunction Should be Denied and the Asset Freeze Should be Lifted Because Plaintiff Failed to Show Irreparable Harm

Plaintiffs cannot establish irreparable harm necessary to obtain the injunctive relief sought. "[P]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32 (1st Cir. 2011); *see also United States v. Oregon State Med. Soc'y*, 343 U.S. 326, 333 (1952) ("The sole function of an action for injunction is to forestall future violations."). "Only a viable threat of serious harm which cannot be undone authorizes exercise of a court's equitable power to enjoin before the merits are fully determined." *Massachusetts Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emgy Prep of Com. of Massachusetts*, 649 F. 2d 71, 74 (1st Cir. 1981). As a result, there must be "a real threat of future violation or a contemporary violation of a nature likely to continue or recur." *Oregon State Med. Soc'y*, 343 U.S. at 33. Importantly, a finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store. *Regan v. Vinick & Young (In re Rare Coin Galleries of Am., Inc.)*, 862 F.2d 896, 902 (1st Cir.1988). Absent clear evidence "that indicates a need for immediate relief, a plaintiff's request for a preliminary injunction ordinarily ought to be rejected." *Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 74 (1st Cir. 2004).

## 1. Irreparable Harm Must Be Demonstrated, Not Presumed.

Plaintiffs argue that irreparable harm is presumed under the Lanham Act. *See* Doc. No. 4, p. 11. This is incorrect. In false advertising cases, this presumption is applied only to representations that are "literally false," and literally false statement had to "mention[] plaintiff's product by name," *Castrol, Inc. v. Quaker State Corp.*, 977 F.2d 57, 62 (2d Cir. 1992), and "directly . . . proclaim[] the superiority of defendant's product over plaintiff's," *McNeil-P.C.C., Inc. v. Bristol- Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir. 1991). There is no presumption of irreparable harm when the accused statements are not directly comparative. *Euro-Pro Operating LLC v. TTI Floor Care N. Am.*, No. CIV.A. 12-10568-DJC, 2012 WL 2865793, at *20 (D. Mass. July 11, 2012); *see also* 4 *McCarthy on Trademarks and Unfair Competition* § 27:37 (5th ed.) (noting that "if the false advertising is non comparative and makes no direct reference to a competitor's product, irreparable harm is not presumed."); *N. Am. Med. Corp. v. Axiom Worldwide*, 522 F.3d 1211, 1226-27 (11th Cir.2008) (concluding that "the district court erred when it presumed that [the plaintiffs] would suffer irreparable harm in the absence of a preliminary injunction merely because [the defendant]'s advertisements are literally false.... Proof of falsity is generally only sufficient to sustain a finding of irreparable injury when the false statement is made in the context of comparative advertising between the plaintiff's and defendant's products"). As a result, here, Plaintiffs must actually demonstrate irreparable harm, which (as discussed below) they cannot do.

## 2. Plaintiffs Failed to Demonstrate Irreparable Harm with Admissible Evidence.

Plaintiffs' unsupported, speculative allegations of irreparable harm as (i.e., loss of goodwill, brand dilution, consumer confusion, and false association) are insufficient satisfy their burden. *See* Doc. No. 4, p. 12. Plaintiffs rely entirely on their president's declaration to assert sweeping, category-wide injuries described vaguely as "erosion of consumer trust," "diversion to knock-offs,"

"inability to recoup R&D," and "tarnished scientific credibility." *Id*. But they offer no specific, admissible evidence linking Defendants to any such alleged reputational injury. The ipse dixit of a financially motivated litigant can never be enough to carry the burden at the preliminary injunction stage. Indeed, Plaintiffs themselves rely upon *Ross-Simons* where the First Circuit recognized that goodwill injuries can be irreparable when supported by evidence; it does not dispense with proof. 217 F.3d 8, 13 (1st Cir. 2000) ("courts often find this type of harm irreparable"). Goodwill injury is only sufficient to establish irreparable harm where the record shows a real, imminent threat, not speculation. Likewise, *Spruce Envtl. Techs*. lists examples of irreparable injuries but ultimately evaluates the actual record; it does not create a per se rule. 2015 U.S. Dist. LEXIS 86552, at *10 (D. Mass. July 2, 2015).

Plaintiffs invoke ¶¶20–27 of the Rinsch Declaration to establish irreparable harm, but the bulk of that discussion (¶¶24–27) addresses trademark injuries, not false-advertising harm. *See* Dkt. 5, ¶¶24-27. It is noted that Defendants are not listed on Schedule B of the Complaint as alleged infringers of the MITOPURE® mark. Even so, Plaintiffs collapse trademark-style injuries (loss of control over the mark, dilution, confusion from use of Plaintiffs' mark) into their false-advertising theory. *Id*. That conflation does not satisfy Plaintiffs' burden to make a defendant-specific showing of irreparable harm on the claim actually at issue, as concerns Defendants.

Nor do Plaintiffs substantiate their "safety" narrative. They speculate that consumers "may" experience adverse reactions to undisclosed ingredients and "may" wrongly conclude they cannot tolerate urolithin A. Doc. No. 4 at 12. But, once again, that assertion rests solely on ipse dixit of Dr. Rinsch, who summarily concludes that "[a] purchaser … may be subject to an adverse reaction … and wrongly attribute it to all urolithin A products." Yet his declaration is totally devoid of any admissible evidentiary support tying any such risk to these Defendants, much less

providing a single example of this. *See* Doc. No. 5 ¶23; *Regan*, 862 F.2d at 902 (irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store). Indeed, even setting aside the ultimate weight of Plaintiffs' cited report, it reflects that Defendants' products did not exceeded Prop 65 daily limits for any of the four metals. *See* Complaint, Ex. 5, at 12-13. Moreover, despite the fact that Totaria began selling the Accused Product in July 2024, Plaintiffs offer no competent, non-conclusory evidence—let alone any defendant-specific showing—that this product has eroded or is likely to erode consumer trust in the urolithin-A category. *See* Doc. No. 4, p. 12. Thus, Plaintiffs have failed to establish no real imminent and irreparable harm.

### 3. Plaintiffs' Allegation that Any Monetary Judgment is Likely Uncollectable Because Defendants Reside in a Foreign Jurisdiction is Meritless.

Furthermore, Plaintiff's feigned concern about Defendants' status as foreign entities who might potentially evade a future judgment, is baseless. Plaintiffs' mere stereotype-driven speculation that foreign defendants will abscond with their funds instead of defending against the charges cannot support a request for injunctive relief. *See Middleton Mixology LLC v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 24 12287, 2025 WL 2693857, at *4 (N.D. Ill. Sept. 22, 2025) (finding no irreparable harm when plaintiff claims that because defendant is based in China that it is unlikely to have any assets in the United States without coloring its claims).[1] Defendants have submitted evidence of their available funds, limited sales and revenues from the Accused Product, and a timely appearance and motion practice through counsel. The

---

[1] Indeed, if the risk of an unenforceable judgment were sufficient grounds for a pre-judgment asset restraint, then every litigant would be entitled to such relief as such a risk is inherent in all litigation. There are likely hundreds of thousands of unenforceable judgments in the United States annually.

Court is thus well within its discretion to dissolve the asset freeze entirely as to Defendants. *Spin Master v. Aciper*, No. 19-cv-6949, 2020 WL 6482878, at \*5 (S.D.N.Y. Nov. 4, 2020) (rejecting "unsupported" allegations against Chinese companies in general, and noting plaintiff's failure to show that the defendant "is likely to dissipate assets" when it "retained counsel and appeared in this action"); *Awareness Ave. Jewelry v. The Partnerships, et al*., No. 23-cv-2-TPB, 2023 WL 3568387, at \*2 (M.D. Fla. May 19, 2023) (premise underlying basis for asset freeze rebutted after funds and sales data produced and defendants "appeared by counsel in this lawsuit to respond to the complaint").

Moreover, Defendants value their goodwill and have no intention of abandoning their brands. *See* Zhu Decl, ¶4; Wang Decl, ¶4. Defendants have invested substantial time and money to build and maintain their brands, including product development, quality control, customer service, and advertising. *Id*. Defendants value their goodwill and have no intention of abandoning their brands. *Id*. Defendants are involved in profitable business operations within the United States, which further diminishes the validity of the Plaintiffs' apprehensions. *Id.*, ¶8. This is evident from their financial reserves in Amazon accounts. Unlike shell companies, Defendants have tangible assets within the jurisdiction, suggesting a greater ability and likelihood to comply with any potential judgment in this case.

### 4. Defendants Have Already Ceased Selling the Accused Products.

There is no basis for continued injunctive relief because Defendants have stopped selling the Accused Products. The purpose of preliminary injunctive relief is to prevent conduct that will likely cause the plaintiff irreparable harm if it is not enjoined. If the conduct the plaintiffs seek to enjoin is not ongoing or not likely to recur, there is no need for an injunction. *Am. Bd. of Psychiatry & Neurology, Inc. v. Johnson-Powell*, 129 F.3d 1,4 (1st Cir. 1997); *see also Pedinol Pharmacal, Inc. v. Rising Pharm., Inc*., 570 F. Supp. 2d 498, 504 (E.D. N.Y. 2008) (citations omitted) ("an

injunction is unnecessary if there is no reasonable likelihood that the conduct at issue will be repeated").

In this case, Defendants have ceased selling any Accused Products and have made clear that they have no intention of selling the Accused Products during the pendency of this lawsuit. *See* Zhu Decl, ¶17; Wang Decl, ¶17. Courts, including the First Circuit, agree that post-complaint changes such as these render immediate irreparable harm unlikely. *See, e.g., Camel Hair and Cashmere Institute of Am., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 13 (1st Cir. 1986) (affirming denial of preliminary injunction where "[defendant's] action in removing the [disputed] coats from sale . . . meant there was no likelihood of its causing any injury to [plaintiffs] at the time the request for an injunction was being considered"); *ADA Sols., Inc. v. Engineered Plastics, Inc.*, 2011 U.S. Dist. LEXIS 142067, at *3 (D. Mass. Dec. 9, 2011) ("Irreparable harm will not result, as a matter of law, if 'the non-movant has or will soon cease the [challenged] activities, thus making an injunction unnecessary.'"); *CCBN.com, Inc. v. C-call.com, Inc.*, 73 F. Supp. 2d 106, 115 (D. Mass. 1999) (Saris, J.) (denying preliminary injunction in false advertising suit because defendant "ha[d] since removed [the disputed] language").

## B. The Balancing of Harms Tips in Defendants' Favor.

The broad-based asset restraint threatens the very existence of Defendants' business and thus, the balance of harms, tips in favor of Defendants. Courts recognize that the threatened loss of an ongoing business—built over years and supporting employees and vendor relationships—including the loss of good will and reputation, constitutes irreparable harm not adequately compensable by money damages. *RMP Capital Corp. v. Bam Brokerage, Inc.*, 21 F. Supp. 3d 173, 182 (E.D.N.Y. 2014); *see also N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 296 F. Supp. 3d 442, 458 (E.D.N.Y. 2017), *aff'd*, 883 F.3d 32 (2d Cir. 2018); *Galvin v. N.Y. Racing Ass'n*, 70

F. Supp. 2d 163, 170–71 (E.D.N.Y.), *aff'd*, 166 F.3d 1200 (2d Cir. 1998); *Ross-Simons*, 217 F.3d at 13.

That is precisely the posture here. Defendants' businesses are heavily dependent on Amazon for sales and cash flow. *See* Zhu Decl ¶ 6; Wang Decl ¶ 6. Yet the accused urolithin-A SKU accounts for only ~1% of Totaria's revenue and ~4% of Migcopat's revenue. *Id.* ¶ 8. Notwithstanding that tiny share—and the cessation of accused sales—the TRO froze all funds in Defendants' marketplace accounts, depriving them of the liquidity needed to pay suppliers, payroll, and ordinary operating expenses. *Id.* ¶ 20. As detailed in the declarations, the freeze has already created immediate cash-flow pressure, threatens layoffs, and jeopardizes fulfillment metrics and listing health for non-accused products—harms to goodwill, ranking history, and customer relationships that cannot be undone with an after-the-fact damages award. *Id.* ¶ 21.

By contrast, Plaintiffs' asserted harms are readily quantifiable (*e.g.*, diverted sales, price effects) and, as shown elsewhere, are not supported by defendant-specific evidence of imminent, non-compensable injury. Equity, therefore, favors lifting the account-wide restraint—or at minimum tailoring it to what is "reasonably necessary" to secure any future equitable relief (as discussed in more detail below). Narrow tailoring is also consistent with Defendants' proposal to cap any restraint at a conservative estimate of profits from the accused sales (or to post bonds in those amounts) while maintaining a stipulation that no accused products will be sold during the case. This approach preserves Plaintiffs' ability to seek an accounting without imposing business-ending consequences on Defendants' lawful, non-accused operations

### C. The Asset Restraint Should be Lifted or at Least Limited to Defendants' profits from the Accused Products.

The asset restraint is overbroad is must be lifted or limited. As a matter of law, a prejudgment asset restraint must be confined to preserving equitable relief and "limited only to

what is reasonably necessary to secure the (future) equitable relief." *Deckers Outdoor Corp. v. P'ships & Unincorporated Assocs. Identified on Schedule A*, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013); *see also Eicher Motors Ltd. v. Individuals Identified on Schedule A Hereto*, 2022 WL 3081869, at 3 (N.D. Ill. Aug. 3, 2022); *Charlesbank*, 370 F.3d at 157–58 (cautioning against "freeze orders" that secure money damages and emphasizing narrow tailoring under the traditional PI factors); *Iantosca v. Step Plan Servs., Inc.*, 604 F.3d 24, 33–35 (1st Cir. 2010) (equitable restraints must track a specific equitable interest/res and may not operate as generalized prejudgment attachment); *Sindi v. El-Moslimany*, 896 F.3d 1, 31 (1st Cir. 2018) (injunctions must be "narrowly tailored to remedy the specific harm shown"). In Lanham Act cases, the only equitable monetary relief at issue is an accounting of the defendant's profits—not gross sales, not unrelated funds. *See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (authority to restrain assets is limited to those that could satisfy an equitable profits award); 5 McCarthy on Trademarks § 30:40 (4th ed.) (purpose of freezing assets is to preserve security for a future accounting of defendant's profits). Courts therefore limit any restraint to a reasonable estimate of profits from the accused sales, and no more. *See Cengage Learning, Inc. v. Doe 1*, 2018 WL 2244461, at *3 (S.D.N.Y. Jan. 17, 2018); *N. Face Apparel Corp. v. TC Fashions, Inc.*, 2006 WL 838993, at *3 (S.D.N.Y. Mar. 30, 2006); *Gucci Am., Inc. v. Weixing Li*, 2011 WL 6156936, at 4 (S.D.N.Y. Dec. 12, 2011).

Even if Plaintiffs could recover Defendants' profits, which they cannot, the asset restraint should still be limited to the amount that Plaintiffs have sufficiently demonstrated they are likely to recover pursuant to an equitable accounting of profits in this case, i.e., those which were earned through the sales of the accused products. *Mattel Inc. v. Entities*, 2021 WL 12314427 at *8 (S.D.N.Y. Feb. 13, 2021) ("In the context of trademark and copyright cases, a preliminary

injunction may restrain only those assets that would account for a disgorgement of defendants' profits."); *see also Suber v. VVP Servs., LLC,* 2021 WL 2894810 at \*2 (S.D.N.Y. July 9, 2021) ( "A court may only issue an asset-freeze injunction pursuant to an equitable claim, and only if the plaintiff demonstrates a 'nexus' between the assets she seeks to freeze and the specific equitable claim sought."); *Shamrock Power Sales, LLC v. Scherer,* 2016 WL 6102370 at \*3 (S.D.N.Y. Oct. 18, 2016) ("Because Scherer's assets may be frozen only to the extent they are the target of a claim for equitable relief, the preliminary injunction must be modified to reflect that none of Scherer's assets in excess of $131,864.88 should be frozen."); *Paradigm BioDevices, Inc. v. Centinel Spine, Inc*., 2013 WL 1915330 at \*4 (S.D.N.Y. May 9, 2013) ("to the extent any injunction is warranted, it must be limited to the assets that Paradigm alleges were fraudulently transferred … [as Paradigm's] equitable interest extends only to the assets fraudulently transferred."); *R.B. Dev., Co. v. Tutis Cap. LLC*, 2012 WL 2357318 (E.D.N.Y. June 20, 2012) ("In any event, it is clear that, even if R.B. could show an equitable interest in some funds that are now located in the bank accounts it seeks to have frozen, it certainly would not have an equitable claim to every dollar in the possession of Lacee, Turner, and Villeroy, which is what the proposed order covers.").

At the time Plaintiffs' *ex parte* motion for entry of a TRO was filed and the TRO was entered, Plaintiffs would likely have had little to no information of Defendants' sales of the identified, Accused Product, including revenues earned therefrom. However, this is no longer the case and has not been the case since Plaintiffs should have received expedited discovery from the platforms. Whatever these sales figures are, for each defendant and absent, for example, evidence of costs of goods, shipping, or other debits therefore, they amount to the maximum amount retrainable under Rule 65 based on the evidence before the court at that time. Because the amount of the "[maximum] profits is known, then the asset freeze should apply only to that specific amount

and no more." *Antsy Labs, LLC v. Individuals, et al.*, 2022 WL 17176498 at *4 (N.D. Ill. Nov. 23, 2022). The platforms have already identified the activities which, Plaintiffs argue, are the proceeds of the alleged false advertising activity identified by Plaintiffs, though Plaintiffs provides no further evidence to support restraining any further funds under Rule 65. *Gucci Am.*, 768 F.3d at 131 (noting that "a plaintiff seeking an account of profits is required to prove defendant's sales" in the Lanham Act context); *Juul Labs, Inc. v. 4X PODS.*, 439 F. Supp. 3d 341, 358-59 (D.N.J. 2020) (noting that "[Plaintiff] has the burden what profits it seeks to disgorge based on the claims asserted in its complaint" and denying request for asset freeze where plaintiff failed to show that all funds in defendant's accounts were from the products which infringed plaintiff's trademark); *tinyBuild, LLC v. The Partnerships et al*., 24-cv- 02413 Dkt. 26 (N.D. Ill. May 7, 2024) (finding that Plaintiff had not met its burden of establishing that it was entitled to a prejudgment asset restraint on all funds in defendants accounts where Plaintiff had received expedited discovery from the platforms on defendants' sales and reducing prejudgment asset restraint to a number closer to the revenue amounts provided by the Amazon platform to Plaintiff).

To be sure, a defendant bears the burden of proving deductible costs so that any profits can be calculated—the equitable remedy an asset restraint is meant to preserve. *Gucci Am.*, 768 F.3d at 133. But that burden presupposes that Plaintiffs have identified the challenged transactions and tied them to the alleged misconduct. Plaintiff has the evidentiary burden to make a clear showing that it is entitled to the relief it is seeking under Rule 65. *Winter*, 129 S. Ct. at 375; *Gucci Am.*, 768 F.3d at 133 (noting that, in the Lanham Act context "a plaintiff seeking an account of profits is required to prove defendant's sales").

Defendant nevertheless provides documentary proof, including sales records of the Accused Products supported by the attached Declarations and exhibits. Migcopat has

approximately $135,522.20 frozen in its account compared to a total of revenues and maximum equitable award of $28,758.09 from the sales of the Accused Products. *See* Wang Decl, ¶¶9-10. Totaria has approximately $541,445.96 frozen in its account compared to a total of revenues and maximum equitable award of $468,098 from the sales of the Accused Products. *See* Zhu Decl., ¶¶9-10. Moreover, Migcopat has incurred losses as a result of sales of the Accused Product, not profits. *See* Wang Decl., ¶15. Totaria's profit from sales of the Accused Product, excluding returns, does not exceed $24,907.41. *See* Zhu Decl., ¶14.

There is no basis for including amounts in Defendants' accounts beyond their total sales amount of the Accused Products. Accordingly, the amount of any asset restraint on Defendants' accounts should be reduced to, at most, the profit from Defendants' sales of Accused Products, $24,907.41 for Totaria, and $0 for Migcopat. *Toho Co. Ltd. v. The P'ships*, 23-cv- 00720, [Dkt. 55] (N.D. Ill. Mar. 28, 2022) (issuing show cause order to plaintiff as to why the asset restraint should not be reduced to roughly the revenue of the accused products in response to defendant submitting sales records of the accused products supported by declaration); *Awareness*, 2023 WL 3568387 (modifying preliminary injunction to eliminate the asset restraint as a result of defendant submitting evidence that their profit from the allegedly infringing sales was minimal).

### D. Plaintiffs' Allegations of a TRO Violation Are Baseless.

During the pendency of this motion, and instead of working in good faith to resolve this motion by entering into an agreed-upon TRO, Plaintiffs refused to negotiate same and instead falsely accused Defendants of violating the TRO. Plaintiffs claimed that they had discovered the existence of a different seller online and accused Defendants of forming the entity and selling through this alternative channel. Plaintiffs' allegations in this regard show that their application was ill-conceived and is lacking in admissible evidence. The entity to whom they referred-- ESUNM, Inc. –has no relationship whatsoever to Defendants. *See* Wang Decl., ¶¶ 19-20; Zhu

Decl., ¶¶ 19-20). A review of the records of the United States Patent and Trademark Office ("USPTO") shows that ESUNM has its own suite of trademarks and appears to have been in operation for many years. See Declaration of Wei Wang, ¶10. It is a wholly separate and distinct entity from either of the Defendants. *See* Wang Decl., ¶¶ 19-20; Zhu Decl., ¶¶ 19-20).

## V.  CONCLUSION.

For the foregoing reasons, Defendants respectfully request that this Court modify the TRO by lifting the asset restraint and deny Plaintiffs' Motion for Preliminary Injunction.


Dated: November 14, 2025                    DEFENDANTS
                                            OYANXI INC. and TCCW INC.
                                            By their attorneys:


                                            */s/ Wei Wang_____*
                                            Wei Wang (admitted *pro hac vice*)
                                            Glacier Law LLP
                                            41 Madison Avenue
                                            Suite 2529
                                            New York, NY 10010
                                            (212) 729-5073
                                            wei.wang@glacier.law

                                            */s/ Amy B. Hackett_____*
                                            Richard E. Briansky (BBO# 632709)
                                            Amy B. Hackett (BBO# 676345)
                                            PECKAR & ABRAMSON, P.C.
                                            28 State Street – Suite 1802
                                            Boston, MA 02109
                                            Tel: (857)-758-3349
                                            Fax: (617) 206-1998
                                            rbriansky@pecklaw.com
                                            ahackett@pecklaw.com

**<u>CERTIFICATION PURSUANT TO LOCAL RULE 7.1</u>**

I undersigned certify that counsel for the parties conferred before filing this motion by telephone and through a series of emails over several days in a reasonable and good faith effort to resolve or narrow the issues raised by this Motion, but the parties were unable to resolve the issues.

Dated: November 14, 2025                    */s/ Wei Wang*_____
                                                Wei Wang

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those parties which are as non-registered participants.

Date: November 14, 2025                     */s/ Amy B. Hackett*_____
                                               Amy B. Hackett